UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PALOMA RESOURCES, LLC, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 4:18-CV-247 |
| § | |
| AXIS INSURANCE COMPANY, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

This is an insurance coverage dispute arising from allegations of industrial espionage. The plaintiffs, Paloma Resources, LLC and Paloma Operating Company, Inc. (which the Court will discuss collectively as "Paloma"), sued their insurance carrier, Axis Insurance Company ("Axis"), and one of their competitors, Continental Resources, Inc. ("Continental"), in Texas state court. Continental removed the case to this Court (Dkt. 1).

Paloma's lawsuit originally sought two judicial declarations: (1) a declaration that Axis improperly denied Paloma coverage under an insurance contract between Paloma and Axis ("the Paloma insurance policy"); and (2) a declaration that Paloma has the right to view, and ultimately to show to Axis, certain documents in Continental's possession under a settlement agreement between Paloma and Continental ("the Oklahoma settlement agreement") (Dkt. 1-4 at pp. 10–11). Only the claim against Axis remains; Judge Miller dismissed the claim against Continental before this case was reassigned to the undersigned judge (Dkt. 42 and Dkt. 55). However, Continental remains in the

lawsuit because it has filed counterclaims and cross-claims, including a counterclaim against Paloma for breach of the Oklahoma settlement agreement (Dkt. 29 at p. 12).

Pending before the Court are motions for partial summary judgment filed by Axis and Continental (Dkt. 57 and Dkt. 59). The Court **GRANTS** both motions.

I. **BACKGROUND**

As is often the case with insurance coverage disputes, this lawsuit is the progeny of a different lawsuit. In 2017, Continental sued Paloma in Oklahoma state court, alleging that "Paloma . . . actively solicited, obtained and possessed Continental's Confidential Information" in a pattern of "fraudulent" and "malicious conduct" that included "bribing and inducing Continental employees to wrongfully misappropriate Continental confidential information" ("the Oklahoma lawsuit") (Dkt. 59-4 at p. 11). According to Continental's Oklahoma state court pleadings, a Paloma employee[1] colluded with two Continental employees[2] over a period of roughly six months to steal confidential information from Continental and transfer it to Paloma's computer network system so that Paloma could use it "to unfairly compete with Continental" (Dkt. 59-4 at pp. 5–12). Continental alleged that Paloma used the prospect of employment with Paloma to induce the Continental employees to steal the information (Dkt. 59-4 at pp. 5–7).

Paloma and Continental ultimately signed the Oklahoma settlement agreement to resolve the Oklahoma lawsuit. In the Oklahoma settlement agreement, Paloma, among other things, expressly stipulated that the Oklahoma lawsuit involved the unauthorized

---

[1] The Paloma employee's name was Mauricio Toro (Dkt. 59-4 at p. 3).
[2] The Continental employees' names were Chad Kaspereit and Jason Hunt (Dkt. 59-4 at p. 2).

disclosure of and access to confidential information[3] and expressly released its right to sue Continental for any "claims . . . in any manner arising out [of] or connected with the allegations in the [Oklahoma lawsuit]" (Dkt. 59-9). Paloma turned to Axis for coverage under the Paloma insurance policy to fund the settlement with Continental and recoup its defense costs (Dkt. 1-4 at p. 8). Axis denied coverage to Paloma, citing the following exclusion in the Paloma insurance policy ("the intellectual property exclusion"):

> The Insurer [Axis] shall not be liable under Insuring Agreement C. Company Liability for Loss on account of any Claim . . . based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged infringement of copyright, patent, trademark, trade name, trade dress, or service mark or the misappropriation of ideas or trade secrets, or the unauthorized disclosure of or access to confidential information; provided that this exclusion shall not apply to Loss on account of a securities Claim, a Securityholder Derivative Demand, or a derivative action.
> Dkt. 59-3 at pp. 26–27; Dkt. 1-4 at pp. 8, 11–12.

When Axis refused to provide coverage to Paloma, Paloma sued Axis, seeking a declaration that Axis owes it coverage under the Paloma insurance policy (Dkt. 1-4 at p. 11). Axis now seeks a summary judgment holding that the intellectual property exclusion applies and that Axis owed Paloma neither a duty to defend nor a duty to indemnify in the Oklahoma lawsuit (Dkt. 59).

---

[3] The stipulation contained in the Oklahoma settlement agreement states:
> For clarity, and for purposes of this Agreement, Continental Confidential Information specifically includes: (1) "Kaspereit/Hunt Data," which means any Business Information of Continental data received by Toro or any other Paloma employees, from Chad Kaspereit, Jason Hunt, or any other Continental employee or agent acting without authority[.]
> Dkt. 59-9 at p. 3.

Paloma also sued Continental, seeking a declaration that the Oklahoma settlement agreement gives Paloma the right to view, and ultimately to show to Axis, the data at issue in the Oklahoma lawsuit (Dkt. 1-4 at p. 10). Judging from Paloma's claims against Axis,[4] Paloma wants to show Continental's documents to Axis to prove to Axis that, despite Paloma's express stipulation to the contrary in the Oklahoma settlement agreement, the Oklahoma lawsuit did not involve confidential information (Dkt. 1-4 at pp. 11–18). Continental countersued Paloma for breach of the Oklahoma settlement agreement, arguing that the release of claims contained in the Oklahoma settlement agreement barred Paloma from filing its declaratory judgment action against Continental (Dkt. 29 at pp. 12–15). Continental also, based on the release of claims, sought dismissal of Paloma's declaratory judgment action against it under Federal Rule of Civil Procedure 12(b)(6) (Dkt. 8).

Judge Miller granted Continental's Rule 12(b)(6) motion and dismissed Paloma's declaratory judgment action against Continental, holding that "the release clause bars Paloma's action for a declaratory judgment as to Continental" (Dkt. 42 at p. 6). Continental now seeks a partial summary judgment on its counterclaim against Paloma for breach of the Oklahoma settlement agreement (Dkt. 57).

---

[4] Paloma takes the position that the Paloma insurance policy "clearly states that before the . . . exclusion applies, it must be *proved* that . . . what was misappropriated was actually a trade secret. Allegations are not enough" (Dkt. 1-4 at p. 13) (emphasis in original). Consequently, according to Paloma, the intellectual property exclusion would not apply if Paloma could show Continental's documents to Axis and demonstrate that the Oklahoma lawsuit did not involve confidential information or trade secrets.

## II. THE LEGAL STANDARDS

In deciding a motion for summary judgment under Federal Rule of Civil Procedure 56, the Court must determine whether the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (citations omitted). In deciding whether a genuine and material fact issue has been created, the Court must review the facts and the inferences to be drawn from those facts in the light most favorable to the non-movant. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

### a. Paloma's claim against Axis

Paloma's claim against Axis is governed by Texas law regarding the construction of insurance policies. Under Texas law, insurance policies are construed in accordance with the same rules as contracts generally. *Canutillo Independent School Dist. v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, 99 F.3d 695, 700 (5th Cir. 1996). The terms used in an insurance policy are to be given their ordinary and generally accepted meaning, unless the policy shows that the words were meant in a technical or different sense. *Id*. The contract is to be considered as a whole, with each part given effect and meaning. *Id*. "When the terms of an insurance policy are clear and unambiguous a court

may not vary those terms." *Id*. "Although interpreting an insurance policy to give a reasonable meaning to all provisions is preferable to interpreting the policy in a way that creates surplusage or leaves a portion of the policy useless or inexplicable, surplusage alone does not make an insurance policy ambiguous." *Grain Dealers Mutual Insurance Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997) (citation omitted).

If a contract is not ambiguous, then "the court will construe the contract as a matter of law." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "A contract . . . is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning." *Id*. When construing an insurance policy, a court can generally consider "surrounding circumstances that inform, rather than vary from or contradict, the contract text." *Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011). "Those circumstances include . . . the commercial or other setting in which the contract was negotiated and other objectively determinable factors that give a context to the transaction between the parties." *Id*. (quotation marks omitted). However, extrinsic evidence is not admissible to render a contract ambiguous which, on its face, is capable of being given a definite certain legal meaning. *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731–32 (Tex. 1981). The determination of whether a contract is ambiguous is a question of law. *Canutillo*, 99 F.3d at 700.

"In Texas, the duty to defend and duty to indemnify are distinct and separate duties creating distinct and separate causes of action." *Gulf Chemical & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993). In determining whether an insurer has a duty to defend an insured against a third-party

complaint, Texas courts follow the "eight corners" rule. *Canutillo*, 99 F.3d at 701. The eight corners rule determines whether the insurer has a duty to defend by comparing the allegations in the third party's pleadings with the language of the insurance policy. *National Union Fire Insurance Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." *Id.* When applying the eight corners rule, "the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged." *Id.* (quotation marks omitted).

Unlike the duty to defend, which is based on allegations, an insurer's duty to indemnify is based on "the actual facts that underlie the cause of action and result in liability." *Northfield Insurance Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528–29 (5th Cir. 2004) (quotation marks omitted). The duty to indemnify "only arises after an insured has been adjudicated, whether by judgment or settlement, to be legally responsible for damages in a lawsuit." *Collier v. Allstate County Mutual Insurance Co.*, 64 S.W.3d 54, 62 (Tex. App.—Fort Worth 2001, no pet.); *see also Reser v. State Farm Fire & Casualty Co.*, 981 S.W.2d 260, 263 (Tex. App.—San Antonio 1998, no pet.). If the actual facts resulting in liability were not fully ascertained because the insured settled with the third party out of court, stipulations can provide a basis for a determination regarding the duty to indemnify. *Canutillo*, 99 F.3d at 701. However, such stipulations are typically unnecessary if the insurer has no duty to defend. *See, e.g., American States Insurance Co. v. Bailey*, 133 F.3d 363, 368–70 (5th Cir. 1998) (applying Texas law)

(holding that when an insurer did not owe a duty to defend under an applicable coverage exclusion, the insurer also necessarily did not owe a duty to indemnify, notwithstanding the fact that the underlying lawsuit between the insureds and third parties had neither settled nor reached a final judgment). As courts have consistently held, it is almost impossible to establish a duty to indemnify if there is no duty to defend: "Under Texas law, the duty to defend is broader than the duty to indemnify. Logic and common sense dictate that if there is no duty to defend, then there must be no duty to indemnify." *Id.* (citation omitted); *see also, e.g., Archon Investments, Inc. v. Great American Lloyds Insurance Co.*, 174 S.W.3d 334, 339 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("[I]f an insurer has no duty to defend, it has no duty to indemnify[.]"); *Collier*, 64 S.W.3d at 62 ("If the facts alleged in the underlying suit are insufficient to invoke the duty to defend, then proof of all those same facts will not invoke the insurer's duty to indemnify."); *Lay v. Aetna Insurance Co.*, 599 S.W.2d 684, 687 (Tex. Civ. App.—Austin 1980, writ ref'd n.r.e.) ("[The insurer] had no duty to defend [the insured], and, in turn, [the insured] has no right to indemnification for the amount of the judgment entered in favor of [the third party] in the previous suit."); *Great American Insurance Co. v. Calli Homes, Inc.*, 236 F. Supp. 2d 693, 698 (S.D. Tex. 2002) (J. Rosenthal) (citing *Lay*) ("If the insurer has no duty to defend the insured, no duty to indemnify is present.").

### b. Continental's claim against Paloma

Paloma and Continental agree that the Oklahoma settlement agreement is governed by Oklahoma law (Dkt. 57 at p. 4; Dkt. 61 at p. 12). In his order dismissing

Paloma's declaratory judgment claim against Continental, Judge Miller aptly summarized the applicable law:

> Under Oklahoma law, a release is a contract. If the language in a contract is clear and without ambiguity, the Court is to interpret it as a matter of law. Similarly, the existence of an ambiguity is a decision to be made by the Court. And, in the absence of fraud or mistake, an executed agreement of settlement is as conclusive against a party seeking to avoid it as the final judgment of a court of competent jurisdiction.
> Dkt. 42 at p. 5 (citations, quotation marks, brackets, and parenthetical phrases omitted).

The Oklahoma Supreme Court has set out the following elements that Continental needs to prove to recover on its breach of contract claim: (1) formation of a contract; (2) breach of the contract; and (3) damages as a direct result of the breach. *Digital Design Group, Inc. v. Information Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001). Continental seeks summary judgment on the first and second elements (Dkt. 57 at p. 5).

### III. ANALYSIS

Both Axis and Continental are entitled to summary judgment. The intellectual property exclusion unambiguously precluded coverage for Paloma in the Oklahoma lawsuit, and Paloma breached the Oklahoma settlement agreement by filing its declaratory judgment action against Continental.

#### a. The intellectual property exclusion precluded coverage for Paloma for the Oklahoma lawsuit.

Axis argues that it is entitled to summary judgment because the intellectual property exclusion unambiguously precluded coverage for Paloma for the Oklahoma lawsuit. The Court agrees.

The intellectual property exclusion reads:

> The Insurer [Axis] shall not be liable under Insuring Agreement C. Company Liability for Loss on account of any Claim . . . based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged infringement of copyright, patent, trademark, trade name, trade dress, or service mark or the misappropriation of ideas or trade secrets, or the unauthorized disclosure of or access to confidential information; provided that this exclusion shall not apply to Loss on account of a securities Claim, a Securityholder Derivative Demand, or a derivative action.
> Dkt. 59-3 at pp. 26–27.

There is no question that Continental's allegations in the Oklahoma lawsuit fell within the scope of the "misappropriation of trade secrets" and "unauthorized access to confidential information" clauses of the intellectual property exclusion. Paloma's argument that the exclusion nevertheless did not apply to the Oklahoma lawsuit pivots on two alternative contentions: (1) the placement of the phrase "actual or alleged" indicates that that phrase only applies to the "infringement" clause of the exclusion, meaning that the "misappropriation of trade secrets" and "unauthorized access to confidential information" clauses of the exclusion are only triggered "if there has been an *actual* misappropriation of trade secrets or an *actual* unauthorized access to confidential information"; and (2) the exclusion is only triggered by the acts of Paloma vice principals or executives (Dkt. 72 at pp. 17, 21) (emphasis in Paloma's brief). The Court disagrees with both contentions. Paloma's interpretation of the intellectual property exclusion is not reasonable.

### i. *The "actual or alleged" language*

As to Paloma's first contention, there is no indication whatsoever that the "misappropriation of trade secrets" and "unauthorized access to confidential information"

clauses of the intellectual property exclusion can only be triggered by an actual determination of these types of claims. An examination of the Paloma insurance policy's exclusionary language as a whole reveals that Paloma's focus on the phrase "actual or alleged" is misplaced for several reasons.

First, Paloma's argument ignores the express language of the other exclusions in the Paloma insurance policy. In this case, when a policy exclusion was intended to only apply in the event of an actual determination of a claim, the policy explicitly states so in no uncertain terms. The Paloma insurance policy contains 17 coverage exclusions (Dkt. 59-3 at pp. 23–27). Four of those exclusions—the "wage & hour" exclusion, the "ERISA" exclusion, the "contractual liability" exclusion, and the intellectual property exclusion at issue here—contain the "actual or alleged" language (Dkt. 59-3 at pp. 23–27). A fifth exclusion—the "pollution" exclusion—contains the phrase "actual, alleged or threatened" (Dkt. 59-3 at p. 25). Just *one* exclusion in the Paloma insurance policy expressly states that it is only triggered by an actual determination of a claim. The "illegal profit/conduct" exclusion applies to claims involving certain enumerated circumstances *"if established by a final and non-appealable adjudication adverse to [the] Insured in the underlying action"* (Dkt. 59-3 at p. 26) (emphasis added). The intellectual property exclusion contains no such language. Where one exclusion in the Paloma insurance policy contains an express limitation on coverage, it would be unreasonable for the Court to read that limitation into a completely differently worded exclusion. In other words, if the intellectual property exclusion required an actual determination of a claim, it would

state so in no uncertain terms like the illegal profit/conduct exclusion does. The intellectual property exclusion does not do so.

Second, Paloma's argument incorrectly presumes the importance of the "actual or alleged" language as the trigger for determining coverage. However, the language that triggers the exclusion is not the phrase "actual or alleged" but the language preceding this phrase. The exclusion provides in pertinent part that Axis will not be liable to pay "on account of any Claim . . . based upon, *arising out of*, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged….." conduct. Dkt. 59-3 at pp. 26–27 (emphasis added). As both the Texas Supreme Court and the Fifth Circuit have consistently held, the phrase "arise out of" gives a coverage exclusion broad reach. *Utica National Insurance Co. of Texas v. American Indemnity Co.*, 141 S.W.3d 198, 203 (Tex. 2004) ("This Court has held that 'arise out of' means that there is simply a causal connection or relation, which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation.") (citation and quotation marks omitted); *Bailey*, 133 F.3d at 370 ("This court has held that the words 'arising out of,' when used within an insurance policy, are broad, general, and comprehensive terms effecting broad coverage.") (quotation marks and footnote omitted). Under the caselaw, "a broadly worded . . . exclusion is not to be narrowly construed[,]" and the caselaw does not hold that the phrase "actual or alleged" must be included for a coverage exclusion to take effect without a final adjudication. *Bailey,* 133 F.3d at 370 (holding that an insurer had no duty to defend or to indemnify under a coverage exclusion providing that "no coverage exists for claims or suits brought against any insured for damages arising from sexual

action"); *see also Southstar Corp. v. St. Paul Surplus Lines Insurance Co.*, 42 S.W.3d 187, 190–91 (Tex. App.—Corpus Christi 2001, no pet.) (holding that an insurer had no duty to defend under a coverage exclusion providing that "[w]e won't cover advertising injury that results from the failure of any protected person to do what is required by a contract or agreement"). The phrase "actual or alleged" does not bear the weight Paloma places on it to require coverage. Accordingly, the Court finds that the intellectual property exclusion is very broadly worded, and the "misappropriation of trade secrets" and "unauthorized access to confidential information" clauses of the intellectual property exclusion do not require an actual determination of a claim to preclude coverage.

### ii. *Paloma's "vice principal" argument*

As to Paloma's second contention, there is no indication whatsoever that the intellectual property exclusion is only triggered by the acts of Paloma vice principals or executives. The Court turns again to the "illegal profit/conduct" exclusion, which, unlike the intellectual property exclusion, contains the express limitation that "only the conduct of the chief executive officer and the chief financial officer or the functional equivalent of those positions in an Insured Organization shall be imputed to the Insured Organization" (Dkt. 59-3 at p. 26). When a different exclusion in the Paloma insurance policy contains an express vice-principal limitation, it is not reasonable to read that limitation into the intellectual property exclusion when the intellectual property exclusion contains no such language.

### *iii. Axis had no duty to defend and no duty to indemnify.*

The intellectual property exclusion unambiguously precluded coverage for Paloma in the Oklahoma lawsuit. Axis had no duty to defend. Given that there was no duty to defend and that Paloma expressly stipulated that the Oklahoma lawsuit involved the unauthorized disclosure of and access to confidential information, Axis also had no duty to indemnify. Axis is entitled to summary judgment on Paloma's declaratory judgment action.

### b. Paloma breached the Oklahoma settlement agreement.

Continental argues that it is entitled to summary judgment on the formation and breach elements of its breach of contract claim because Paloma breached the Oklahoma settlement agreement by filing its declaratory judgment action against Continental. The Court agrees.

In dismissing Paloma's declaratory judgment action against Continental, Judge Miller held that Paloma's declaratory judgment action was "a 'claim' within the terms of the release" of claims contained in the Oklahoma settlement agreement (Dkt. 55 at p. 2). Judge Miller further held that:

> Paloma sued for a declaration that *it* has the right to view Continental's documents—the same documents that gave rise to the initial dispute. Even taking all inferences in Paloma's favor, those documents are directly connected to Continental's allegations in the Oklahoma litigation.
>
> Paloma cannot have it both ways. It cannot release claims arising from those documents and then sue to gain access to them. As a result, the release clause bars Paloma's action for a declaratory judgment as to Continental.

Dkt. 42 at p. 6 (citations omitted; emphasis in Judge Miller's order).

A holding that Paloma breached the Oklahoma settlement agreement by filing its declaratory judgment action against Continental is a natural extension of Judge Miller's analysis. Paloma has provided no persuasive reason for the Court to reconsider Judge Miller's conclusions. Continental is entitled to summary judgment on the formation and breach elements of its breach of contract claim.

IV. **CONCLUSION**

The motions for partial summary judgment filed by Axis and Continental (Dkt. 57 and Dkt. 59) are **GRANTED**.

SIGNED at Houston, Texas, on April 3, 2020.

*George C. Hanks Jr.*
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE